## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JONATHAN SHADWRICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.  4:14-CV-1371-SLB** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Jonathan Shadwrick brings this action pursuant to 42 U.S.C. § 405(g)[1], seeking review of the Commissioner of Social Security's final decision denying his application for supplemental security income ["SSI"].  Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Mr. Shadwrick filed an application for SSI on July 14, 2011, alleging disability beginning on July 7, 2011.  (Doc. 8-6 at R.132.)[2]  His application was initially denied on

---

[1] The judicial review provisions for claims for disability insurance benefits, 42 U.S.C. § 405(g), apply to claims for SSI, see 42 U.S.C. § 1383(c)(3).

[2] Reference to a document number, ["Doc. ____"], refers to the number assigned to each document as it is filed in the court's record.  References to page numbers ["R.____"] refers to the page number of the record from the Social Security Administration.

October 7, 2011.  (Doc. 8-3 at R.25; doc. 8-5 at 77-79.)  Thereafter, he requested a hearing before an Administrative Law Judge ["ALJ"], which was held on November 7, 2012, in Birmingham, Alabama.   (Doc. 8-3 at R.25, R.38; doc. 8-5 at 84-85.)  After the hearing, the ALJ found that Mr. Shadwrick was unable to perform his past relevant work, but he was capable of performing other jobs that exist in significant numbers in the national economy. (Doc. 8-3 at R.32.)  Therefore, the ALJ found, "The claimant has not been under a disability, as defined in the Social Security Act, since July 8, 2011, the date the application was filed."[3] (*Id.* at R.33.)   In light of these findings, the ALJ found that Mr. Shadwrick was not disabled and denied his request for SSI on December 18, 2012.  (*Id.*)

Mr. Shadwrick then requested review of the ALJ's decision by the Appeals Council. (*Id.* at R.1.)   The Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision.  Therefore, [it] denied [Mr. Shadwrick's] request for review." (*Id.*)

Following denial of review by the Appeals Council, Mr. Shadwrick filed an appeal in this court.  (*See generally* doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into

---

[3]The court notes that Mr. Shadwrick applied for SSI benefits on July 14, 2011, and alleged an onset date of July 7, 2011.  (Doc. 8-6 at 132.)

whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cor. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. <u>DISCUSSION</u>

**A. THE FIVE-STEP EVALUATION**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for SSI.  *See* 20 C.F.R. § 416.920(a)(1)-(2); *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "The term 'disability' means – (A) [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 416(i)(1).  The specific steps in the evaluation process are as follows:

**1. Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[4]

---

[4]The regulations state:

(a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. § 416.972.  If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or his age, education, and work experience.  20 C.F.R. § 416.920(b).  "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity."  *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[5]

The ALJ found that Mr. Shadwrick had not engaged in substantial gainful activity since July 8, 2011. (Doc. 8-3 at R.27.)

## 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

_____

(c)  *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 416.972.

[5]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

techniques." 42 U.S.C. § 1382c(a)(3)(D).  The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience." 20 C.F.R. § 416.920(c).  "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 416.921(a).  A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 416.923.  A claimant has the burden to show that she has a severe impairment or combination of impairments.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Shadwrick "has the following severe impairments:  lumbar degenerative disc disease, chronic obstructive pulmonary disease ["COPD"], pancreatitis, depressive disorder with anxiety, panic attacks, alcoholism, polysubstance abuse, and borderline intellectual functioning."  (Doc. 8-3 at R.27.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is

equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of his age, education, and work experience. 20 C.F.R. § 416.920(d). The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Shadwrick "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. 416.920(d), 416.925 and 416.926)." (Doc. 8-3 at R.27.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents him from performing his past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work. 20 C.F.R. § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it. 20 C.F.R.

7

§ 416.960(b)(1).  If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled.  20 C.F.R. § 416.920(e).  The claimant bears the burden of establishing that the impairment prevents him from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found:

the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except that he can frequently climb ramps or stairs, balance[,] stoop, kneel, crouch and crawl.  He would be precluded entirely from climbing ladders, ropes or scaffolds.  He can sustain no more than occasional exposure to extreme cold or heat and wetness or humidity.  He can also sustain no more than occasional exposure to irritants such as fumes, odors, gases or chemicals.  He should avoid all exposure to hazardous moving machinery and unprotected heights.  He should be limited to that work which requires no more than the understanding, remembering and carrying out of simple, but not complex or detailed[,] instructions.  The individual can perform these tasks for 2 hour periods and with normal breaks, to complete an 8 hour workday.  He should be subjected to no more than occasional changes in the workplace that are simple, gradually introduced and well-explained.  His interaction with the public should be on an occasional basis.  There should be no reading or writing required.  Tasks on the job must be able to be demonstrated in order to be taught and learned.

(Doc. 8-3 at R.30.)  Based on this RFC, the ALJ found that Mr. Shadwrick is unable to perform his past relevant work.  (*Id*. at R.32.)

### 5.  Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of his RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the

national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. §

416.920(c)(1).   The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience.   Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 416.960(c)(1).

Because the ALJ found Mr. Shadrick could not perform a full range of light work,

he consulted a Vocational Expert [VE] to determine "whether jobs exist in the national

economy for an individual with the claimant's age, education, work experience, and residual

functional capacity."  (Doc. 8-3 at 33.)   The VE testified that an individual with Mr.

Shadrick's limitations and vocational factors could perform the requirements of certain

light, unskilled occupations, including inserter, hand bander, and sorter.  (*Id*.)  Based on this

testimony, the ALJ found Mr. Shadrick "is capable of making a successful adjustment to

other work that exists in significant numbers in the national economy [and a] finding of 'not

disabled' is therefore appropriate under the framework of the above-cited rules."  (*Id*.)

## B.  MR. SHADRICK'S CLAIMS

Mr. Shadrick alleges the following errors in the ALJ's decision:

1. Claimant Meets Listing 12.04

9

2. Claimant Meets Listing 12.05C

3. The Appeals Council Failed to Remand

4. The ALJ Failed to Consider All Claimant's Severe Impairments

5. The ALJ Improperly Rejected the Opinion of Dr. Wilson, the Consultative Examiner, and Substituted His Own Opinion

6. The ALJ Failed to Consider Claimant's Combination of Impairments in Determining Disability

7. The ALJ Failed to State Adequate Reasons for Finding Claimant Not Credible

8. The ALJ Decision was Not Based on Substantial Evidence

9. The Finding that Claimant has the Residual Functional Capacity to Perform Light Work is Not Supported by Substantial Evidence

(Doc. 11 at 3.)

For the reasons set forth below, the court finds that the Commissioner's decision is due to be affirmed.

**1. Appeals Council**

Mr. Shadwick contends that the Appeals Council erred in failing to remand his case based on new evidence.[6]  (Doc. 11 at 27-29.)  Specifically he contends that this case is due

---

[6]In this section of his Memorandum, Mr. Shadwick does not identify the new evidence or otherwise explain why this unidentified evidence would have made a difference. Indeed, he contends:

Importantly, all submissions describe physical and psychological symptoms manifested by *Howard* that, due to their nature and severity, could bear on her condition during the relevant period between *7/1/05* the alleged onset date and

10

to be remanded because the Appeals Council did not show that it had adequately evaluated his new evidence.  (Doc. 11 at 28 [citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)].)[7]

The Eleventh Circuit has held that "nothing in . . . *Epps* . . . requires the Appeals Council to provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell v. Commissioner, Social Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).  In this case, the Appeals Council denied Mr. Shadwrick's request for review because it "found no reason under [its] rules to review the [ALJ's] decision."  (Doc. 8-3 at R.1.)  It stated that it had "considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of the Appeals Council;" this evidence included the Medical Interrogatory completed by Dr. John Schosheim dated May 6, 2013.  (*Id*. at R.2, R.6.)  These statements by the Appeals Council are sufficient to demonstrate that it considered Mr. Shadwrick's "new" evidence.  *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262 (11th Cir. 2007).

---

*11/23/10*, the date of the decision.  In other words, there is a "reasonable possibility" that the evidence, if credited, would persuade the ALJ in this case to reverse its decision.

(Doc. 11 at 28 [emphasis added].)  This portion of Mr. Shadwrick's Memorandum was obviously copied from an earlier document prepared by counsel.  Counsel is encouraged to carefully review all documents filed before the court.

[7]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

11

Moreover, considering all record evidence, including Dr. Schosheim's opinion, the Commissioner's decision to deny Mr. Shadwrick's claim for benefits is not erroneous. *See id*. at 1266-67. Dr. Schosheim answered a series of questions proposed on a form by Mr. Shadwrick's counsel. His answers are brief, without elaboration, and appear to be based solely on medical records. (*See* doc. 8-10 at R.461.)[8] Such opinion was based on medical record review, is cumulative of the evidence before the ALJ, and does not undermine the

---

[8]For example, Interrogatory 7 and Dr. Schosheim's response are as follows:

7. Please specify the claimant's impairments, if any, established by the evidence. Note that regardless of how many symptoms an individual alleges, or how genuine the complaints may appear to be, the existence of a medically determinable mental impairment must be established by medically acceptable clinical or laboratory diagnostic techniques. Cite the objective medical findings that support your opinion, with specific references to the evidence we provided for the case record.

[Response:]
Depressive Disorder NOS [—] Gadsden . . . evalu. – [October 2012]

Alcohol dependence (partial remission) [—] Bentley Phd. . . . eval – [September 2011]

Anxiety Disorder [with] panic attacks [—] Riverview Reg. Med. Center [November 2012]

Borderline Intelligence/Cognitive Disorder [—] Quality of Life – [March 2012 to August 2012]

(Doc. 8-10 at 461.) Dr. Schosheim's response merely recounts diagnoses made by other healthcare providers. He cites no "objective medical findings" to support his diagnoses of these same mental impairments.

12

substantial evidence supporting the ALJ's decision.  *See Mitchell*, 771 F.3d at 785; *see also Harrison v. Commissioner of Social Sec.*, 569 Fed. Appx. 874, 881 (11th Cir. 2014).

Nothing in the additional evidence submitted to the Appeals Council rendered the ALJ's decision contrary to the weight of the record evidence.  The court finds no error in the decision of the Appeals Council to deny review of the ALJ's decision.

**2. ALJ's Decision**

**a. Step Two:  Claimant's Severe Impairments**

Mr. Shadwrick contends, "The ALJ failed to consider the following impairments:  low back pain due to L4-5 right paracentral disc protrusion, compressing the proximal L5 nerve root, and L4-S1] foraminal stenosis."  (Doc. 11 at 31.)  The Eleventh Circuit has held:

> If the ALJ determines at step two that there is no severe impairment, then the claimant is not disabled.  [20 C.F.R.] § 416.920(c).  Thus, the finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as "severe," is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  Where a claimant has alleged several impairments, the Commissioner must consider the impairments in combination and determine whether the combined impairments render the claimant disabled.  *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).  An ALJ's statement that it has considered a combination of impairments is adequate to meet this standard.  *Id*.

> Any error at step two was harmless because the ALJ found in [the claimant's] favor as to impairment, *Jamison*, 814 F.2d at 588, and the ALJ properly noted that he considered [the claimant's] impairments in the later steps, *Jones*, 941 F.2d at 1533.  We affirm that the ALJ committed no error in considering [the claimant's] severe impairments or combination of impairments.

*Hearn v. Commissioner, Social Sec. Admin.*, No. 14-15261, 2015 WL 4591811, *2-*3 (11th Cir. July 31, 2015).

In this case, although the ALJ did not list as severe impairments "L4-5 right paracentral disc protrusion . . . and L4-S1 foraminal stenosis," he did find "lumbar degenerative disc disease" as a severe impairment.[9]  The ALJ found Mr. Shadwrick had severe impairments and moved to the next step, wherein he considered Mr. Shadwrick's complaints of pain, along with other impairments and limitations.  Therefore, any error of the ALJ in failing to list paracentral disc protrusion and foraminal stenosis as severe impairments, separate from degenerative disc disease, was harmless.

### b.  Step Three – The Listings

#### i.  Combination of Impairments

Mr. Shadwrick contends, "The record clearly indicates that claimant is suffering from a combination of impairments:  pancreatitis, COPD, emphysema, low back pain due to L4-5 right paracentral disc protrusion, compressing the proximal L5 nerve root, L4-S1 foraminal stenosis, borderline intellectual functioning, anxiety, depression, and panic attacks," and the ALJ "failed to consider [his] combination of impairments in determining disability."  (Doc. 11 at 32, 34.)  Mr. Shadwrick has not developed this argument.  *See Hearn v. Colvin*, Civil

---

[9]Although not argued by the Commissioner, the court notes that disc protrusion and foraminal stenosis may be signs or symptoms of degenerative disc disease and not properly considered as separate and distinct impairments.

14

Action No. 4:12-CV-3892-AKK, 2014 WL 4809421, *7-*8 (N.D. Ala. Sept. 26, 2014), *aff'd*

*Hearn*, 2015 WL 4591811.

> "Significantly, [Mr. Shadwrick] does not explain how this combination of
> conditions limits his ability to work, and "the mere existence of these
> impairments does not reveal the extent to which they limit [his] ability to work
> or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405
> F.3d 1208, 1213 (11th Cir. 2005).  In other words, [Mr. Shadwrick] has
> "simply stat[ed] that an issue exists, without further argument or discussion,"
> which "constitutes abandonment of that issue and precludes . . . considering
> the issue on appeal." *Singh* [*v. U.S. Att'y Gen.*], 561 F.3d [1275,] 1278 [(11th
> Cir. 2009)("[S]imply stating that an issue exists, without further argument or
> discussion, constitutes abandonment of that issue and precludes our
> considering the issue on appeal.")].

*Hearn v. Colvin*, 2014 WL 4809421, *8  (N.D. Ala. 2014).

The court finds that any issue regarding whether the ALJ erred by failing to consider
Mr. Shadwrick impairments in combination has been abandoned.

Nevertheless, the court finds the ALJ considered the combination issue, based on his
statement that "[t]he claimant does not have an impairment or ***combination of impairments***
that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part
404, Subpart P, Appendix 1 . . . ."  (Doc. 8-3 at R.27 [emphasis added].)   This statement
"evidences consideration of the combined effect of [Mr. Shadwrick's] impairments."  *See*
*Jones v. Department of Health and Human Services,* 941 F.2d 1529, 1533 (11th Cir. 1991).
Therefore, assuming this issue has not been abandoned by Mr. Shadwrick, the court finds it
is without merit.

## ii. Opinion of Dr. David R. Wilson

David R. Wilson, Ph.D., performed a psychological evaluation on Mr. Shadwrick at the request of his counsel.  (*See* doc. 8-8 at R.325, R.330.)  As a result of his evaluation, he determined, *inter alia*, that Mr. Shadwrick was extremely limited in his ability –

- to understand and to remember detailed instructions;
- to carry out detailed instructions
- to maintain attention and concentration for extended periods
- to perform activities within a schedule, to maintain regular attendance, and to be punctual;
- to sustain an ordinary routine without special supervision;
- to work in coordination or proximity to others without being distracted by them;
- to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- to interact appropriately with the general public;
- to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and
- to travel in unfamiliar places or to use public transportation.

(Doc. 8-8 at R.331-32.)  He found Mr. Shadwrick was markedly limited in his ability –

- to remember locations and work-like procedures;
- to accept instructions and to respond appropriately to criticism from supervisors;
- to respond appropriately to changes in the work setting;
- to be aware of normal hazards and take appropriate precautions; and
- to set realistic goals or to make plans independently of others.

(*Id.*)  The ALJ "accord[ed] little weight to the opinions offered during [the] consultative examination by Dr. Wilson.  The extreme limitations noted are inconsistent with the record

16

as a whole, are based largely on claimant report alone, and are directly contradictory to Dr. Bentley and Dr. Estock's assessment." (Doc. 8-3 at R.31-R.32.)

Mr. Shadwrick argues, "The ALJ improperly rejected Dr. Wilson's opinion and substituted his own opinion." (Doc. 11 at 29.) As support for his argument, Mr. Shadwrick discusses a number of cases, but he makes no effort to explain, with reference to the record before the court, how these cases apply to the instant action. The court finds Mr. Shadwrick has not demonstrated any error in the ALJ's findings – that the extreme limitations found by Dr. Wilson are inconsistent with the record as a whole and contradictory to the limitations found by Dr. Bentley and Dr. Estock – or in the weight he accorded the opinion of Dr. Wilson.

For purposes of deciding whether Mr. Shadwrick meets Listings 12.04 and 12.05(C), the court has considered him to be moderately limited in the manner described by Dr. Estock and found by the ALJ.

### iii. Listing 12.04

After setting forth, without discussion, evidence from the record, Mr. Shadwrick contends that he meets Listing 12.04 for Affective Disorders. (Doc. 11 at 25; *see id*. at 18-25.) In his decision, the ALJ stated:

> The severity of claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, 12.05, 12.06, and 12.09. In making this finding, the undersigned has considered whether the "paragraph B" criteria . . . are satisfied. To satisfy the "paragraph B" criteria . . . , the mental impairments must result in at least two of the following marked restriction of activities of daily living; marked

17

difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has moderate restriction. The claimant's problems completing his activities of daily living are allegedly due to his breathing problems. He is able to perform personal care tasks and he cooks for himself daily (Exhibit 4E). However, it is apparent that his ex-wife's mother handles his bills for him (Exhibit 3E).

In social functioning, the claimant has moderate difficulties. The claimant alleges difficulties around large groups of people, stating that he suffers from panic attacks. He is also uncomfortable around unfamiliar people, and cites disputes arising while he worked at KFC in 2011. However, he is able to maintain a stable relationship with his 4 children, his ex-wife, and a close relationship with his ex-wife's mother.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. He struggles to complete tasks, and has some short-term memory problems. Additionally, he failed to perform serial 7s and 3s upon examination (Exhibit 4F p. 3). However, he was able to complete other relevant tasks upon examination such as counting backwards and recall of information.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. There is simply no evidence of any episodes of decompensation.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria . . . are not satisfied.

The undersigned has also considered whether "paragraph C" criteria of 12.02, 12.04, 12.06, and 12.09 are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant has had no episodes of decompensation, and it is not foreseeable that the claimant would

decompensate due to a minimal change in his environment or increased mental demands.   Additionally, the claimant has been living outside of a highly supportive environment, as he currently live[s] alone.

(Doc. 8-3 at R.28-29.)

In his Memorandum in Support of Disability, Mr. Shadwrick sets forth part of his testimony during the hearing before the ALJ and a summary of treatment records and evaluations.  (*See* doc. 11 at 19-24.)  He then states, "The evidence supports a finding of disability under Listing 12.04."  (*Id*. at 24.)  Based on his discussion of the evidence and his terse summation that this evidence supports his claim of disability based on this Listing, the court finds that Mr. Shadwrick argues only that the ALJ's decision is not supported by substantial evidence.

Listing 12.04 –

consists of (i) a statement describing the disorder[ ] . . .; (ii) paragraph A criteria, which are a set of necessary medical findings; and (iii) paragraph B criteria, which list impairment-related functional limitations that are incompatible with the claimant's ability to do any gainful activity. Listing[ ] . . . 12.04 also include[s] additional functional criteria, known as paragraph C criteria.  A claimant can meet . . . Listing[ 12.04] only if "the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." [20 C.F.R. Pt. 404, Subpt. P, App. 1,] § 12.00(A).

The paragraph B criteria require a claimant to have at least two of the following: *marked* restrictions in activities of daily living; *marked* difficulties in maintaining social functioning; *marked* difficulties in maintaining concentration, persistence, or pace; or *repeated* episodes of decompensation, each of extended duration.  *Id*. [§ 12.04(B)].  "Marked" means "more than moderate but less than extreme;" marked restriction occurs when the degree of limitation seriously interferes with a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis."  *Id.* §

19

12.00(C); *see* 20 C.F.R. § 416.920a(c)(4)(describing a five-point scale used to rate the degree of limitation: none, mild, moderate, marked, and extreme). "Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).  To meet the criterion of "repeated" episodes of "extended duration," a claimant must have three episodes within one year, or an average of once every four months, each lasting for at least two weeks.  *Id.*

> As regards paragraph C criteria, . . . 12.04(C) require[s] a medically documented history of the alleged mental disorder "of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," as well as one of the following:  (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process resulting in "such marginal adjustment" that it is predicted that "even a minimal increase in mental demands or change in the environment" would cause decompensation; or (3) a current history of at least one year's "inability to function outside a highly supportive living arrangement," with an indication that this arrangement needs to continue.  *Id.* . . . 12.04(C).  . . .

*Bellew v. Acting Commissioner of Social Sec.*, 605 Fed. Appx. 917, 923-24 (11th Cir. 2015)(emphasis added; some internal citations not applicable to Listing 12.04 omitted).

The court has reviewed the entire record and finds that the ALJ's determinations regarding Listing 12.04 are supported by substantial evidence, despite conflicting evidence in the record.

The Psychiatric Review Technique, prepared by psychiatrist Robert Estock, M.D., notes the following with regard to the B Criteria of the Listing 12.04:

- Moderate Limitations in Restriction of Activities of Daily Living
- Moderate Limitations in Difficulties in Maintaining Social Functioning

- Moderate Limitations in Difficulties in Maintaining Concentration, Persistence, or Pace
- No episodes of Decompensation, Each of Extended Duration

(Doc. 8-8 at R.281.)  As per the C Criteria, Dr. Estock found the evidence did not establish the presence of the C Criteria.

The ALJ relied on the Function Reports completed by Mr. Shadwrick and Debra Buchanan, his ex-wife's mother and his friend.  (Doc. 8-3 at R. 28-29.)  According to these Reports Mr. Shadwrick lives alone,  (doc. 8-7 at R.155, R.163); he has no problems with his personal care, (*id*. at R.156, R.164); he makes his own meals, (*id*. at R.157, R.165); he shops for groceries and household goods about once a week, (*id*. at R.158, R.166); he has visitors, (*id*. at R.159, R.167); sees his young daughters, (*id*. at R.159); and he does not have problems getting along with family, friends, or neighbors, (*id*. at R. 160).  Mr. Shadwrick and Ms. Buchanan both indicated that his "illnesses, injuries, or conditions" did not affect his memory, concentration, understanding, following instructions, and/or getting along with others.  (*Id*. at R.160, 168.)  Ms. Buchanan said he "has no problem" paying attention and that he follows spoken instructions "well," gets along "well" with authority figures.  (*Id*. at R.160-61.)  She noted that he has panic attacks when he cannot breathe.  (*Id*. at R.161.)  Mr. Shadwrick said that he had "worked until [he] could not breathe."  (*Id*. at R.164.)  He also noted that he had panic attacks when he could not breathe.  (*Id*. at R.169; *see also id*. at R.187.)

The ALJ also relied on a consultative examination performed by Jack L. Bentley, Jr., Ph.D. (Doc. 8-3 at R.29.) He noted that Mr. Shadrick "failed to perform serial 7s and 3s upon examination. However, he was able to complete other relevant tasks upon examination such as counting backwards and recall[ing] information." (*Id*. [citing doc, 8-8 at R.269].)

Based on this evidence the ALJ found that Mr. Shadrick did not meet Listing 12.04. because did not meet the B or C criteria. Mr. Shadrick has failed to show that this finding is not supported by substantial evidence.

### iv.  Listing 12.05(C)

Mr. Shadrick contends that he meets Listing 12.05(C). (Doc. 11 at 27.) The ALJ found:

> Turning back to listing 12.05, the claimant does not meet the threshold for the listing. Despite the Full Scale IQ score of 70 that was recorded, the claimant has never been diagnosed with mental retardation[10] as neither the consultative psychological examiners found the claimant to have significant deficits in adaptive functioning. Additionally, the claimant does not suffer from ***deficits in adaptive functioning***, as required by the 12.05 listing. The claimant is a divorced father of 4 children. He currently lives alone and is independent in his activities of daily living. While he has performed only unskilled jobs in the past, he has done said work at substantial gainful activity levels. As noted above, the claimant's alleged limitations in his activities of

---

[10]"On August 1, 2013, . . . the Social Security Administration amended Listing 12.05 by replacing the words 'mental retardation' with 'intellectual disability.' *See* 78 Fed. Reg. 46,499, 46,501 [(codified at 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05)]. This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." *Id*. at 46,499. The Social Security Administration stated that the change 'does not affect the actual medical definition of the disorder or available programs or services.' *Id*. at 46,500." *Hickel v. Commissioner of Social Sec.*, 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013).

daily living are due to his physical limitations, and not due to deficits in intellectual functioning. Because the claimant's alleged impairment does not meet the threshold of the 12.05 listing, his impairment does not meet or medically equal that listing.

(Doc. 8-3 at R.29-30 [emphasis and footnote added].)

"The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that [the claimant's] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997). The introductory paragraph of Listing 12.05 states, "Intellectual disability refers to significantly subaverage general intellectual functioning ***with deficits in adaptive functioning*** initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Id*. § 12.05 (emphasis added). Mr. Shadwrick contends that he meets the C criteria of Listing 12.05, which requires a showing of "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. § 12.05(C). Although the record contains evidence that could support a finding that Mr. Shadwrick meets the C criteria – a full scale IQ score of 70 and impairments that impose

significant work-related limitations, he has not shown, or argued, that he meets the criteria of the introductory paragraph, specifically, deficits in adaptive functioning.

The regulations do not define "deficits in adaptive functioning" as used in Listing 12.05.  However, "the Diagnostic and Statistical Manual of Mental Disorders ('DSM') states that adaptive functioning 'refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting.'" *O'Neal v. Commissioner of Social Sec.*, No. 14-14011, 2015 WL 3605682, *3 (11th Cir. June 10, 2015)(quoting DSM-IV-TR at 42).  In a different context, the Fifth Circuit has noted:

> "[A]daptive behavior means the effectiveness with or degree to which a person meets the standards of personal independence and social responsibility expected of the person's age and cultural group."  [*Ex parte*] *Briseno*, 135 S.W.3d [1,] 7 n.25 [(Tex. Crim. App. 2004)](internal quotation marks omitted).  The [American Association of Mental Retardation ("AAMR")] identifies ten adaptive skill areas:  "communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work."  *Atkins v. Virginia*, 536 U.S. [304,] 308 n.3 [(2002)](internal quotation marks omitted).  A person must have deficits in at least two of these skill areas in order to meet the AAMR diagnostic criteria for adaptive behavior deficits.  *Matamoros v. Stephens,* 783 F.3d 212, 217 (5th Cir. 2015).

*Henderson v. Stephens*, 791 F.3d 567, 580 (5th Cir. 2015).

The court need not dwell on the proper meaning of deficits in adaptive functioning because Mr. Shadwick does not argue that the ALJ's finding in this regard was error.

In his brief, Mr. Shadwick notes:

Claimant dropped out of school in the eighth grade and was in special education classes.  [(Doc. 8-3 at R.46.)]

Counsel ordered claimant's school records from four different locations and received one sheet of records [(Doc. 8-7 ast R.209-10.)]  Claimant has testified that he was in special education classes throughout school.  The school records surviving indicate that on [May 5, 1986], claimant scored at the 4th grade, 8th month level on combined Reading, Arithmetic and Language testing during Adult Basic Education classes with the CITY program.  Scores at this level are consistent with an IQ of 70, which was assigned by David Wilson on [October 8, 2012.][11] [(Doc. 8-8 at R.328.)]

Claimant testified regarding his limitations:

ALJ:  Are you able to read the newspaper?

CLMT:  I can read some little words, but I can't read like the whole paper, no sir.

ALJ:  Okay, what about making a list of groceries and going to the store to get what you need.

CLMT:  No sir.  I just . . . well if I have someone there to help me spell it, I do it like that.  [(Doc. 8-3 at R.59.)]

All of Claimant's past work has been unskilled:

"VE: Mr. Shadwrick's past work is as follows:  He has been a fast food worker, 311472010 light, unskilled, SVP of 2; Poultry Eviscerator, 525687074, light, unskilled, SVP of 2; Hand Presser, this is a dry cleaner setting, 363684018, light, unskilled, SVP of 2.  [*Id.* at R.65.)]

In addition to low IQ, Claimant suffers from the following significant work related problems:  lumbar degenerative disc disease, chronic obstructive pulmonary disease, pancreatitis, and depressive disorder with anxiety and panic attacks.  [(Doc. 8-8 at R.319-22, R.337-40.)]

---

[11]Mr. Shadwrick has cited no evidence or authority for his statement that his IQ score is consistent with his school records.

(Doc. 11 at 26-27 [footnote added].)  This evidence, however, does not rebut the ALJ's findings that Mr. Shadwrick "does not suffer from deficits in adaptive functioning," and that he "has never been diagnosed with mental retardation."  (Doc. 8-3 at R.29.)  In his Reply Brief, Mr. Shadwrick argues, "The ALJ in this case did not make sufficient findings to substantiate the invalidity of the IQ score of 70."  (Doc. 13 at 3.)  However, the ALJ did not find the IQ score was invalid.  Indeed, he seems to have assumed a valid score, stating, "Despite the Full Scale IQ score of 70 that was recorded, the claimant has never been diagnosed with mental retardation as neither of the consultative psychological examiners found the claimant to have significant deficits in adaptive functioning."[12]  (Doc. 8-3 at R.29.)

The evidence recited in Mr. Shadwrick's briefs may indicate that he has functional intellectual limitations.  However, the evidence does not rebut the ALJ's finding that he does not suffer from significant deficits in adaptive functioning, especially in light of his ability too live independently.  "Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial

[12]Dr. David R. Wilson, Ph.D., the psychologist who administered the IQ test, opined Mr. Shadwrick's full scale IQ score of 70 "places him in the lower end of the Borderline range."  (Doc. 8-8 at R.328.)  Dr. Bentley opined, "[w]ithout the benefit of intelligence testing," that Mr. Shadwrick's "cognitive functioning would appear to fall in the Upper End of the Mild Range of Mental Retardation to Borderline Range."  (*Id*. at R.269.)  Dr. Estock found that Mr. Shadwrick's "functional ability is higher than upper end of Mild [intellectual disability]," based on Activity of Daily Living reports from Mr. Shadwrick and Ms. Buchanan.  (*Id*. at 283.)  Also, at the hearing, the ALJ read a list of impairments, including "borderline intellectual functioning;" Mr. Shadwrick's counsel agreed with this list of impairments and did not seek to raise intellectual disability as an additional impairment. (Doc. 8-3 at R.44-45.)

evidence." *Parks ex rel. D.P. v. Commissioner, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015)(citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Mr. Shadwick has not demonstrated the ALJ erred in finding he did not meet Listing 12.05(C) based on a failure to show significant deficits in adaptive functioning.

### c. Step Four: Residual Functional Capacity/Mr. Shadwick's Credibility

#### i. Credibility

Mr. Shadwick contends, "The ALJ failed to state adequate reasons for finding claimant not credible." (Doc. 11 at 34.)  Without argument or explanation, he contends, "The 'reasons' set out in the body of the decision by the ALJ are not adequate reasons for finding Claimant not credible."  (*Id*. at 39.)

The court finds that Mr. Shadwick has abandoned this issue.  *See Singh*, 561 F.3d at 1278.  He has merely quoted selective portions of the record and cited case law without any attempt to formulate an argument.  This is insufficient to allow this court to review the issue on appeal.

Nevertheless, considering the issue, the court finds the ALJ's decision regarding Mr. Shadwick's credibility is supported by substantial evidence and is in accordance with the proper legal standards.  The Eleventh Circuit has "held that credibility determinations are the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and [it] will not disturb a clearly articulated credibility finding supported by substantial evidence, *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)."  *Mitchell v. Commissioner, Social Sec.*

27

*Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).  In this case, the ALJ "clearly articulated" his reasons for discrediting Mr. Shadwick's subjective complaints to the extent such complaints were inconsistent with his RFC.  (*See* doc. 8-3 at 31.)  These reasons are supported by substantial evidence.[13]  (*See id*. at 53-55, doc. 8-8 at R.254-56, R.262, R.264, 267-70, R.319, 326-27, 329, 342; doc. 8-10 at 448.)

Therefore, the court will not disturb these findings.

### ii.  Residual Functional Capacity

"The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment(s)."  *Brown v. Colvin*, No. 4:14-CV-1916-VEH, 2015 WL 2381077, *3 (N.D. Ala. May 19, 2015)(citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 416.945(a)).  However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] condition as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)(quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(internal quotation omitted)).

_____

[13]In his Memorandum, Mr. Shadwick quotes part of his testimony from the hearing before the ALJ, (*see* doc. 11 at 36-39 [quoting doc. 8-3 at 47-53]); this testimony is Mr. Shadwick's responses to his attorney's questions, (*see* doc. 8-3 at 47-53).  Notably, this testimony does not include any reference to his drug, alcohol, and nicotine use, which the ALJ found significant in deciding whether Mr. Shadwick was credible. (*See* doc. 8-3 at 31.) The court notes as late as November 2012, about a month before the ALJ's decision, Mr. Shadwick reported that he was smoking a pack of cigarettes a day.  (Doc. 8-10 at 448.)

Mr. Shadwrick contends that the ALJ "failed to follow SSR 96-8p." (Doc. 11 at 42.) Citing a Physical Residual Functional Capacity Assessment prepared by an agency physician, and not the ALJ, he contends that the ALJ's "RFC assessment is simply conclusory and does not contain any rationale or reference to the supporting evidence as required by SSR 96-8p." (*Id*. at 41 [citing doc. 8-8 at 285-292].) The court disagrees.

The ALJ stated that his RFC finding was based on his consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (Doc. 8-3 at R.30.) "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court or [the Eleventh Circuit] to conclude that [the ALJ] considered [his] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)(quoting *Foote*, 67 F.3d at 1561)(internal quotations omitted). Clearly, merely reading the ALJ's Decision leads to the inevitable conclusion that the ALJ considered all of Mr. Shadwrick's alleged limitations, he discussed the evidence, and he adequately stated his rationale. (Doc. 8-3 at R.30-32 [citing, *inter alia*, doc. 8-8 at 255, 267-70, 283, 285-95, 317, 321, 339, 341; doc. 8-9 at 360, 375; doc. 8-10 at 447]; *see also* doc. 8-3 at R.54-55.) The court finds no reason to disturb the ALJ's finding regarding Mr. Shadwrick's RFC, which is supported by substantial evidence.

### e.  Step Five:  Vocational Expert Testimony

Mr. Shadwrick contends, "The ALJ has relied on VE testimony, which was not based on a correct or full statement of claimant's limitations and impairments."  (Doc. 11 at 39.) This argument is grounded on claimant's contentions that the ALJ erred in assessing his credibility and determining his RFC.  For the reasons set forth above, the court finds that these findings of the ALJ will not be disturbed on appeal.  Thus, the court finds no error in the ALJ's reliance on the VE's testimony, which was based on the RFC and vocational factors the ALJ had determined, to find Mr. Shadwrick was not disabled.

### CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed.  An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 10th day of September, 2015.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE